**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

ST. JAMES ENTERTAINMENT : 
LLC, : 
                   : 
      Plaintiff, : 
                   :     CIVIL ACTION NO. 
v. :     1:09-CV-1975-RWS 
                   : 
DASH CROFTS, : 
                   : 
      Defendant. : 
                   : 

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion for Summary Judgment [65], Defendant's Request for Oral Argument [78], and Plaintiff's Motion for Partial Summary Judgment [63]. After considering the record, the Court enters the following Order.

### Background

At the center of this dispute is the soft-rock hit of 1972, "Summer Breeze" by Seals & Crofts. On November 30, 2001, the singing duo, made up individually by Jimmy Seals ("Seals") and Defendant Dash Crofts ("Defendant" or "Crofts"), executed an agreement ("the Agreement") with Jack Hale

("Hale"), doing business as Hale House Productions, and Plaintiff St. James Entertainment LLC ("Plaintiff" or "St. James"). (Dkt. No. [63-3], Ex. 1, at 2; Dkt. No. [65-2] at ¶ 1). The purpose of the Agreement was to create SCHR Productions, LLC ("SCHR" or "the Company") and to produce re-recordings of several Seals & Crofts hit songs for a new album, *TRACES* ("the Album"). (Dkt. No. [65-2] at ¶¶ 3–4; Dkt. No. [74-6] at ¶¶ 3–4).

Under the Agreement, SCHR's business affairs were to be run exclusively by the Board of Managers, which initially consisted of, *inter alias*, Hale, Seals, and Crofts. (Dkt. No. [63-3], Ex. 1, at ¶ 6). It stipulated that only St. James and Hale "shall have the authority to bind the Company with respect to any contracts or documents reasonably necessary for the promotion, manufacturing or distribution of the Album."[1] (Id.). In turn, Seals and Crofts were obligated to "complete production and delivery to the Company at least [45] minutes of master recordings … within [10] weeks from the date of the first recording session." (Id. at ¶ 10). However, failure to perform any of Seals and Crofts' material obligations "shall not be deemed a breach of [the]

---

[1]The Agreement also provided that "[n]o Member or employee of the Company shall act on behalf of the Company or attempt to bind the Company without the prior written authorization of the Board. Any such actions shall be deemed null and void and without equitable or legal effect." (Id. at ¶ 43).

Agreement unless [St. James] gives [Crofts] written notice of such failure to

perform and such failure is not corrected within [30] days from and after receipt

of such notice." (Id. at ¶ 19).

> The Agreement also provided that
>
> [e]ach of the [members to the Agreement] shall be entitled to
> pursue other investments, business opportunities or musical
> pursuits (including but not limited to production of other music-
> related projects) free and clear of any interest, claim or entitlement
> of the Company and any other Member. No Member shall have
> any duty, contractual, fiduciary or otherwise, arising out of th[e] …
> Agreement to offer any other Member an opportunity to invest in,
> or otherwise participate in any such investment, business
> opportunity or musical pursuit.

(Id. at ¶ 38). Furthermore, "[a] Manager shall have no liability to the Company

or the Members for any act or omission, unless such act or omission is the direct

result of fraud or willful misconduct of the Manager where the Manager did not

act in good faith." (Id. at ¶ 44). Finally, each Member of the LLC agreed to "do

all such other acts and things as may be required by law or as may be required

to carry out the intent and purposes of the Agreement." (Id. at ¶ 45).

> Pursuant to the Agreement, Seals, Crofts, and Hale re-recorded several

songs for the Album in late 2001 and early 2002. (Dkt. No. [76] at 7).

Defendant says the recordings were delivered and subsequently edited by the

Company to produce the final cut of the Album, which was released in May

2004 and contained 41 minutes and 44 seconds of musical recordings. (Dkt. No. [65-2] at ¶¶ 21–22, 24–25; Dkt. No. [76] at 7).

In 2008, John Lappen ("Lappen"), who held himself out as an agent for San Juan Records ("San Juan"), contacted the managing member of the Company, John Bultman ("Bultman"), in regard to San Juan's interest in using the Album's version of "Summer Breeze." (Dkt. No. [76] at 9). Bultman emailed Crofts to notify him about Lappen's proposals. (Id. at 10).

Crofts then initiated contact with Lappen. (Id. at 13). On December 27, 2008, Crofts sent the following email ("the Email"):

> Dear [Lappen],
> I'm so sorry that I haven't returned any of your calls. …
> First, let me say, that John Bultman and his company are the LAST people to contact about anything musical! They know absolutely NOTHING about music, contractual offers, concerts, recording albums, Etc. They have been strickly (sic) an investment company and are into building warehouses, etc.
> Our deal with them was to finance the CD "Traces" which does have "Summer Breeze" and all the other hits, but they have been recorded from a different approach (sort of our own personal rendition).
> I'm sure the record company that you mentioned would be interested in re-recording the original "Summer Breeze" instead of the version on "Traces".
> What really disappoints me is that you contacted John Bultman who knows absolutely nothing about the music business. As you can see in John Bultman's letter, he is the reporting manager of the company. They have NOTHING to do with all of

4

our Gold and Platinum albums or any other recording except the
CD "Traces" which they put up an advance for.

…

Anyway, I think [Seals] will lean away from this offer to re-
record "Summer Breeze". I already am not real enthusiastic about
it either. We recently made a deal with "Gap" to re-record it and it
paid us $60,000 each plus it wasn't a long period contract and we
made residuals also.

The main reason I lean away from this offer, is to maintain
the prestige and the value of "Summer Breeze" by not taking deals
that are low in financial offers. We have a certain standard to
uphold.

In any case I will call [Seals] tomorrow and discuss this
offer with him. This deal would be between us and San Juan
Record Group because Bultman['s] company is only involved in
the second recording of Summer Breeze and not in any other hit
that we recorded.

I will call you to discuss all of the details that I just
mentioned.

(Dkt. No. [63-4], Ex. 2, at 2–3). Although St. James says the Email was

intended to divert San Juan away from doing business with the Company,

Crofts disputes this and says that the "[E]mail was intended to screen Lappen

from contacting Plaintiff so that Crofts could verify Lappen's credentials,

qualification and reputation." (Dkt. No. [76] at 10–12). Regardless of the

Email's purpose, Crofts accidentally sent the Email to Bultman instead of

Lappen. (Id. at 12).

Nevertheless, Defendant continued to communicate with Lappen after he

sent the Email. (Id. at 14). Defendant and Plaintiff dispute whether Crofts ever

5

told anyone at St. James or the Company about his discussions with Lappen. (<u>Id.</u> at 16). Although San Juan had made an offer to Crofts in regard to re-recording "Summer Breeze," Defendant rejected the offer. (<u>Id.</u> at 17). As to the offer made to Plaintiff about using the Album's version of "Summer Breeze," St. James says it declined the offer because of Crofts's alleged misconduct. (Dkt. No. [65-2] at ¶¶ 41–42; Dkt. No. [74-6] at ¶¶ 41–42).

On July 21, 2009, St. James filed its Complaint [1] against Crofts, seeking equitable rescission of the contract (Count I), and asserting claims for breach of contract (Count II), breach of fiduciary duty (Count III), breach of the duty of good faith and fair dealing (Count IV), unjust enrichment (Count V), and asserting that injunctive relief and accounting are appropriate (Count VI). (Dkt. No. [1] at ¶¶ 27–55). The Court dismissed the claim for equitable rescission on July 13, 2010. (Dkt. No. [37] at 14). On January 26, 2011, Plaintiff filed its Motion for Partial Summary Judgment [63] as to Counts II, III, and IV, and Defendant filed his Motion for Summary Judgment [65]. Plaintiff filed a Request for Oral Argument [78] on March 21, 2011.

## Discussion

## I.    Motion for Oral Argument

St. James has requested oral argument on its Motion for Partial Summary

Judgment [63] and Defendant's Motion for Summary Judgment [65]. Because

the Court finds the briefing on these motions sufficient, the Motion for Oral

Argument [78] is **DENIED**.

## II.     Motions for Summary Judgment

    A.     <u>Motion for Summary Judgment Standard</u>

    Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears

'the initial responsibility of informing the … court of the basis for its motion,

and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.' "

<u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)

(internal quotation marks omitted) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 323 (1986)). Where the moving party makes such a showing, the burden

shifts to the non-movant, who must go beyond the pleadings and present

affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (explaining that once the moving

party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

    B.    <u>Count II: Breach of Contract</u>

Plaintiff has set forth two theories for how Crofts breached the Agreement. First, St. James alleges that "Defendant's actions and omissions in failing to provide recordings, master recordings, the Artwork or the Album for commercial duplication and distribution amounts to a breach of the Agreement." (Dkt. No. [1] at ¶ 35). Second, it alleges that "Defendant's actions in utilizing the recordings and master recordings to his commercial advantage without the permission or authorization of the Company, amounts to a breach of the Agreement." (<u>Id.</u> at ¶ 36). Defendant asserts that "plaintiff admits its breach of contract claim is based *entirely* on Croft's alleged failure to deliver 45 minutes of master recordings." (Dkt. No. [65-1] at 12) (emphasis in original). Therefore, according to Crofts, the Court should dismiss the claim because: (1) Plaintiff never notified him of the breach as required in the Agreement; (2) the requisite bad faith for liability under the Agreement does not exist; (3) evidence is lacking in regard to the length of the recordings *delivered* rather than the edited product of those recordings; and, (4) St. James made no effort to

determine the damages of any alleged breach, which would be a speculative

estimate even if it had. (Id. at 12–17).

St. James, however, argues that the Agreement provided that Crofts had

no authority "to negotiate with Lappen or San Juan in any capacity, either on

behalf of the Company or on his own behalf individually" and that he was

"required to carry out the intent and purposes of [the] Agreement." (Dkt. No.

[63-2] at 19–21). According to Plaintiff, Crofts breached the Agreement when

he attempted to "steer away" and interfere with a potential business deal for the

Album "without advising anyone else at the Company." (Id. at 21–23).

"The elements for a breach of contract claim in Georgia are the (1)

breach and (2) the resultant damages (3) to the party who has the right to

complain about the contract being broken." Kuritzky v. Emory Univ., 669

S.E.2d 179, 181 (Ga. Ct. App. 2008). The parties dispute whether Plaintiff has

presented sufficient evidence to show that there was a contractual breach that

caused damages.

One dispute concerns whether Crofts violated Paragraph 45 of the

agreement, which requires him to "do all such other acts and things as may be

required by law or as may be required to carry out the intent and purposes of

[the] Agreement," or whether Crofts's actions were in "pursu[it of] other

10

investments, business opportunities or musical pursuits," as allowed by Paragraph 38. (Id. at ¶¶ 38, 45).  Defendant stated in his deposition that his intended email to Lappen was meant to steer him away from St. James. Plaintiff argues that this was done so that Defendant could enter into an agreement with San Juan.  Defendant maintains that his intent was not to strike a side deal, but rather to vet Lappen's credentials before having him approach the Company.

In mid-2008, Lappen contacted the Company, through Bultman, regarding San Juan's interest in a deal involving the Album's version of "Summer Breeze."  (Dkt. [76] at 10).  Bultman states that he sent an email to Crofts regarding San Juan's proposal.  (Id. at 9).  It appears from Defendant's intended email to Lappen, that he was aware that the Company was negotiating with San Juan for the Album's version of "Summer Breeze."[2]  (Dkt. [65-3] at 6-7).  However, Crofts maintains that he was never aware of any specific discussions or negotiations between Lappen and the Company.  (Dkt. [76] at

---

[2] The email states in relevant part:
  I'm sure the record company that you mentioned would be interested in recording the original "Summer Breeze" instead of the version on "Traces.".
  What really disappoints me is that you contacted John Bultman who knows absolutely nothing about the music business.
(Dkt. [65-3] at 6).

15-16).  Additionally, Crofts maintains that his email merely acknowledged Lappen's interest in a deal to re-record all of Seals and Croft's original hits, and that Lappen had not conveyed an interest in any of the songs on Traces.  (Dkt. [65-3] at ¶ 11).  Based upon the record before it, the Courts finds Defendant's version of what transpired strains credulity, but cannot, construing the facts in the light most favorable to Defendant, conclude that no rational trier of fact could accept Defendant's account of his interaction with Lappen. A jury is best suited to making a determination of an individual's credibility after observing that individual testify.

First, as to Paragraph 45, if Crofts's communications with Lappen were intended to screen San Juan as he says they were, then a jury could find that he did not breach the Agreement. However, a jury could also find that he frustrated the intent of the Agreement to sell the Album if Crofts was trying to divert business from the Company.  Second, if Crofts was unaware of Lappen's interest in the Album, and believed that Lappen was only interested in a new recording of Seals and Crofts's hits, his conduct would come within the scope of Paragraph 38 of the Agreement which allows Crofts "to pursue other investments [and] business opportunities." Third, paragraph 6 of the Agreement does state that only the Producer has the authority to bind the

12

Company in regards to any contract to promote the Album, but does not limit Crofts's ability to explore  promotional opportunities or negotiate promotional deals.  Finally, Plaintiff did not provide notice to Crofts that he failed to provide the requisite length of recordings for the Album, as required for such failure to constitute a breach.

As to the damages element of the breach of contract claim, Plaintiff asserts that it is only seeking summary judgment on Defendant's liability for breaching the contract and "should be able to produce evidence and testimony to a jury at trial to demonstrate both what the original potential deal was worth, and whether Defendant's admitted statements to 'steer away' Lappen could have caused him and San Juan, or others, to offer an inferior deal than originally planned . . . ." (Dkt. [77] at 11). If Plaintiff intended to provide the jury with evidence at trial to prove actual damages, that evidence should have been identified through discovery.  While the determination of damages is a decision to be rendered by a jury, Holmes v. Drucker, 411 S.E.2d 728, 730 (Ga. Ct. App. 1991), the jury must have a basis upon which to base an award for damages.  See Ogletree v. Navistar Int'l Transp. Corp., 535 S.E.2d 545, 548 (Ga. Ct. App. 2000) (verdict must be supported by evidence not conjecture). Plaintiff has failed to present any evidence by which a jury could determine

actual damages, and therefore summary judgment is appropriate as to Plaintiff's claim for actual damages.  Nonetheless, even "if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." O.C.G.A. § 13-6-6.  Because a jury might find that Crofts breached the Agreement and thus award nominal damages to Plaintiff, the Court cannot dismiss Plaintiff's breach of contract claim for a failure to produce evidence of actual damages. See Botterbusch v. Preussag Int'l Steel Corp., 609 S.E.2d 141, 147 (Ga. Ct. App. 2004) (finding the trial court erred in granting summary judgment on the nominal damages portion of a breach of contract claim although the plaintiff could not show actual damages from the breach).  Furthermore, St. James's argument that it might have received a better deal or that an agreement would have been reached but for Crofts's actions is wholly speculative and thus insufficient to survive Defendant's motion. See James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Servs., LLC, 612 S.E.2d 17, 21 (Ga. Ct. App. 2005) ("The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause … ." (quoting Witty v. McNeal Agency, Inc., 521 S.E.2d 619, 628 (Ga. Ct. App. 1999))).

Therefore, Defendant's Motion for Summary Judgment [65] as to Count II is **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion for Summary Judgment [63] as to Count II is **DENIED**.  To the extent Count II is based upon a breach of paragraphs 6 or 19, it is **DISMISSED**.  Plaintiff may only pursue a breach of contract claim based upon a breach of paragraph 45. Further, as to that claim, Plaintiff may not pursue actual damages at trial but may seek only nominal damages.

### C.    Count III: Breach of Fiduciary Duty

Crofts argues that Plaintiff lacks a cognizable claim for breach of fiduciary duty because: (1) he acted expressly within his rights under Paragraph 38 of the Agreement and therefore there was no breach; (2) even if his conduct was not allowed by the Agreement, the Agreement requires a showing of bad faith; and (3) Plaintiff has failed to produce evidence of any injury resulting from Crofts's conduct.  (Dkt. [72] at 9-19). St. James argues that because Crofts attempted to "steer away" business from the Company, of which he is a manager, he breached his fiduciary duty to the Company. (Id. at 13–19).

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." Bailey v. Stonecrest Condominium Assoc.,

15

Inc., 696 S.E.2d 462, 494 (Ga. Ct. App. 2010) (quoting Ansley Marine

Construction, Inc. v. Swanberg, 660 S.E.2d 6, 9 (Ga. Ct. App. 2008)).  "It is

well settled that corporate officers and directors have a fiduciary relationship to

the corporation and its shareholders and must act in good faith." Argentum

Int'l., LLC v. Woods, 634 S.E.2d 195, 202 (Ga. Ct. App. 2006) (quoting Paul v.

Destito, 550 S.E.2d 739 (Ga. Ct. App. 2001)); see also O.C.G.A. § 14-11-

305(1) ("A member or manager shall act in a manner he or she believes in good

faith to be in the best interests of the [LLC] . . .").

　　　　As noted above, the parties dispute the real intent of Crofts's

communication with Lappen, and this dispute presents a genuine issue of

material fact.  If San Juan was contemplating an agreement with the Company

and Crofts's intent was to deter it from doing so, then he violated his fiduciary

duty to the Company and acted in bad faith.  Because there is a genuine dispute

as to whether Crofts intended to steer Lappen away from the Company, the

Court cannot grant summary judgment to either party on the question of

whether Crofts breached his fiduciary duty to the Company.  As to damages,

although Plaintiff has failed to produce evidence of actual injury, a jury may

still award nominal damages if it proves even a *de minimis* injury. Willett v.

Stookey, P.C., 568 S.E.2d 520, 528 (Ga. Ct. App. 2002) ("Where no actual

AO 72A
(Rev.8/82)

damage flows from the injury, nominal damages may be awarded. Yet, some injury–even if small or nominal–is necessary.").  Plaintiff also asserts that it will seek punitive damages for Crofts's breach, which the jury could award even in the absence of actual damages.  Holmes, 411 S.E.2d at 730; Mack Trucks, Inc. v. Conkle, 436 S.E.2d 635, 640 (Ga. 1993).  Therefore, as to Count III of Plaintiff's Complaint both Defendant's Motion for Summary Judgment [65] and Plaintiff's Motion for Summary Judgment [63] are **DENIED**.  However, Plaintiff may only seek nominal and punitive damages as to this claim.

> D.      Count IV: Breach of Duty of Good Faith and Fair Dealing

"The requirement that a party exercise good faith and honest judgment, even where the contractual language grants the party discretion, arises from the implied duty of good faith and fair dealing imposed upon virtually every contract under Georgia law."  Capital Health Mgmt. Group, Inc. v. Hartley, 689 S.E.2d 107, 112 (Ga. Ct. App. 2009) (citation omitted).  Plaintiff argues that Crofts's actions raise an inference of bad faith and that "[t]o the extent that Crofts had discretion in his contractual obligations under the Agreement, … [Crofts's] conduct and actions were not an exercise of good faith and fair dealing in carrying out his obligations under the Agreement." (Id. at 24–25).

17

Crofts argues that the Court should dismiss Count IV of the Complaint because (1) the covenant of good faith and fair dealing cannot provide an independent basis for liability if the breach of contract claim fails; (2) there can be no breach where Crofts acted as expressly allowed by the Agreement; and, (3) there is no obligation to promote the Album before accepting other business opportunities for himself. (Dkt. No. [65-1] at 20–21).

Given that Plaintiff still has a viable claim for breach of contract, Crofts's first argument is unavailing. Furthermore, because there is a genuine dispute about whether Crofts's actions fall within the sphere permitted by paragraph 38 of the Agreement, or whether it violates his obligations under paragraph 45 and as a manager of the Company, the Court cannot determine as a matter of law whether Defendant violated the duty of good faith and fair dealing.  Finally, while there may be no obligation for Crofts to promote the Album before seeking a separate business opportunity, he does have an obligation not to divert a business opportunity away from the Company.  Therefore, as to Count IV, both Defendant's Motion for Summary Judgment [65] and Plaintiff's Motion for Summary Judgment [63] are **DENIED**.

AO 72A
(Rev.8/82)

E.    Count V: Unjust Enrichment

As to count V for unjust enrichment, Crofts argues the Court should dismiss the claim because (1) given that there is no dispute that the Agreement is valid, "an unjust enrichment theory does not lie where there is an express contract," and (2) he was not unjustly enriched. (Id. at 21–23).

"'An unjust enrichment theory does not lie where there is an express contract.'" Akro v. Cirou, 700 S.E.2d 604, 608 (Ga. Ct. App. 2010) (alterations omitted) (quoting Donchi, Inc. v. Robdol, LLC, 640 S.E.2d 719, 724 (Ga. Ct. App. 2007)). Neither party disputes that the Agreement is a valid contract. (Dkt. [65-1] at 22; Dkt. No. [74] at 23). Therefore, Plaintiff's claim for unjust enrichment fails. Defendant's Motion for Summary Judgment [65] on Count V is **GRANTED**.

F.    Count VI: Injunctive Relief and Accounting

As to count VI for injunctive relief and accounting, Defendant says no valid claim exists because: (1) "assuming Plaintiff seeks preliminary injunctive relief, [it] has not moved for a preliminary injunction as required under Fed. R. Civ. P. 65"; (2) "to the extent Plaintiff seeks permanent injunctive relief, Plaintiff cannot demonstrate any right to such relief because Plaintiff is seeking to enjoin conduct that is expressly authorized by the Agreement"; (3) "Plaintiff

19

has adequate legal remedies in both contract (via the Agreement) and tort (e.g.,

for breach of fiduciary duties), through which Plaintiff could obtain full relief";

and, (4) "there is no evidence suggesting that an accounting of Crofts's personal

finances will uncover money that Plaintiff is entitled to recover." (Dkt. [65-1] at

23–24). In response, Plaintiff argues that to the extent that Plaintiff is able to

prove that Crofts attempted to divert business from the Company to himself, it

would be entitled to pursue the remedy of injunctive relief to prohibit such

conduct in the future.  (Dkt. No. [74] at 24).

        The Court construes Plaintiff's request for injunctive relief as seeking a

permanent injunction rather than a preliminary injunction. Under the principles

of equity, a plaintiff requesting a permanent injunction must satisfy a

four-factor test:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that, considering the
> balance of hardships between the plaintiff and defendant, a remedy
> in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Thus, the

standard for a permanent injunction is essentially the same as for a preliminary

injunction except that the movant must show actual success on the merits

20

instead of a likelihood of success on the merits. <u>Siegel v. Lepore</u>, 234 F.3d 1163, 1213 (11th Cir. 2000). Plaintiff has failed to demonstrate that it lacks adequate remedies at law to compensate it for any alleged similar future injury. Rather, Counts II-IV of Plaintiff's Complaint are examples of the legal remedies available to it, if Defendant attempts to divert business from the Company to himself. Therefore, St. James's request for permanent injunctive relief is **DISMISSED**.

As to the request for accounting, Plaintiff states that "accounting is an equitable *remedy* that can be authorized by a party's breach of a fiduciary duty." (Dkt. [74] at 24 (emphasis in original)). Plaintiff cites <u>Williams v. Tritt</u>, 415 S.E.2d 285, 286 (Ga. 1992), in support of its argument that "if Plaintiff can prove that the Defendant breached his fiduciary duties, . . . then clearly one of the remedies that Plaintiff can seek is the equitable remedy of accounting." (Dkt. No [74] at 24). The court in <u>Williams</u> found accounting to be an appropriate remedy pursuant to the Georgia Uniform Partnership Act, specifically O.C.G.A. § 14-8-22. 415 S.E.2d at 286. In that case, the Supreme Court of Georgia held that "[b]ecause there [was] some evidence that [a partner] personally received benefits from [a business] to which [another partner] did not consent, the trial court did not err in granting an accounting." <u>Id.</u> However,

<u>Williams</u> is distinguishable from the present action.  First, the Company is a limited liability company, not a partnership.  While, the Georgia Code specifically provides a "[r]ight to accounting," in regards to partnerships, O.C.G.A. § 14-8-22, it has no similar section in the chapter on limited liability companies.   Second, in the present case Crofts did not accept San Juan's offer and Plaintiff has failed to produce any evidence that Crofts obtained a benefit from San Juan to which the Company is entitled.

To the extent that Plaintiff attempts to assert a claim for equitable accounting under O.C.G.A. § 23-2-70, such a claim fails because Plaintiff has not adduced evidence that an accounting would likely result in the discovery of an amount of money to which it is entitled.  See <u>Riverview Condo. Ass'n v. Ocwen Fed. Bank, FSB</u>, 645 S.E.2d 5, 7 (Ga. Ct. App. 2007) ("The sufficiency of a petition for an equitable accounting depends 'upon whether the facts alleged showed that on an accounting the petitioner will likely be entitled to recover judgment for some amount.'" (citation omitted)). Therefore, Plaintiff's request for accounting is **DISMISSED**.

Defendant's Motion for Summary Judgment [65] as to Count VI is **GRANTED**.

22

## Conclusion

For the aforementioned reasons, Defendant's Request for Oral Argument [78] is **DENIED**. Defendant's Motion for Summary Judgment [65] is **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion for Summary Judgment [63] is **DENIED**.  Count II, to the extent it is based upon paragraphs 6 or 19 of the Agreement, Count V, and Count VI of Plaintiff's Complaint are **DISMISSED**.

**SO ORDERED**, this __8th__ day of August, 2011.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)